SWANN, Judge.
Appellant filed a complaint seeking, inter alia, an injunction against appellees. Ap-pellees filed a Motion to Dismiss on the grounds that the complaint failed to state a cause of action. The trial court granted the Motion to Dismiss, with prejudice. This appeal followed. The parties will be referred to herein as in the trial court.
The complaint, filed May 15, 1964, alleged generally that Steve and Lucy Catroneo owned and operated a business in Dade County, Florida, which distributed a non-carbonated beverage known as “Yoo Hoo” and that the Catroneos sold the business, including the good will, to plaintiff; that the defendant, Steve Catroneo, was retained as an employee in a position of trust, and thereafter conspired with Lucy Ca-troneo to injure the business by soliciting employees of the plaintiff to work for him in a new, competing business; that the Ca-troneos used plaintiff’s facilities, without permission, to bottle their own beverage; that the Catroneos used confidential business information acquired by the • position of trust to injure the business and solicited the distributors and customers of the plaintiff; that the Catroneos had organized a new business to sell a chocolate beverage named “Zippy” and that they were soliciting the customers and accounts which were the basis of the good will sold by the Ca-troneos to the plaintiff.
Plaintiff sought injunctive relief to restrain the Catroneos from engaging in the new business, and from impairing the good will sold by them to the plaintiff; to restrain Zippy Chocolate Beverage, Inc. from engaging in the manufacture and distribution of a non-carbonated chocolate beverage in Florida, and to award the plaintiff compensatory and punitive damages. Attached to and incorporated in the complaint were two exhibits.
A motion to dismiss the complaint was filed on the ground of failure to state a cause of action, and an order was entered dismissing the case with prejudice.
The trial court, in its order, relied on Renpak, Inc. v. Oppenheimer, Fla.App.1958, 104 So.2d 642.
The Renpak case, supra, is similar to the case at bar, insofar as the employer-employee relationship is concerned, but did not contain the question of a sale of “good will” as herein alleged.
The court in Renpak stated on page 645:
* * * * * ‡
“Generally, in the absence of an express contract equity will not enjoin an agent or employee, after the cessation of his employment, from soliciting business from customers of a former principal or employer where no business secret or trust had been reposed in him because of this relationship. Knowledge acquired by an employee concerning names and addresses of customers is not the property of the employer unless such has been obtained in confidence. Skill and knowledge are assets gained by an employee which are transferable to his future use in business and in life and which become a part of his own mental equipment. It is impossible to leave them behind so long as they exist within the mind of the employee. Not all knowledge gained by an employee or agent is confidential and in such instance equity has no place in restriction of its subsequent use. 28 Am.Jur., Injunctions, sections 113 and 114, pp. 306-308, and 43 C.J.S. Injunctions § 148b, pp. 755-757. See also Simms v. Burnette, 1908, 55 Fla. 702, 46 So. 90, 16 L.R.A.,N.S., 389.
“As previously indicated, the appellant is a wholesaler of certain types of supplies and merchandise to hotel sup *222 ply firms and retail businesses. Generally, where a former employer is engaged in business as a manufacturer or wholesaler dealing primarily with retail merchants or jobbers, or sells to members of a readily ascertainable class, the knowledge of the names of the customers of the employer which a former employee has is not a ‘trade secret’ which equity will protect through injunction. See 43 C.J.S. Injunctions § 148b, p. 757, and Haut v. Rossbach, 1940, 128 N.J.Eq. 77, 15 A.2d 227, affirmed 128 N.J.Eq. 478, 17 A.2d 165.”
* * * s|s * *
Here, as in Renpak, supra, there is no allegation that the defendants had entered into an agreement not to engage in a competing business, entice away any employees, or solicit customers of appellant; nor does it charge that any trade secrets were obtained.
The allegations of conspiracy herein were general and must fall under the authority of Renpak, supra, which held that “[gjeneral allegations of conspiracy are inadequate; the allegations must be clear, positive and specific.”
There is room for argument as to whether “good will” was actually sold herein by the Catroneos to appellant. One of the exhibits, dated February 20, 1962, referred to a sale of good will, together with other items, but stated that the terms and conditions of the sale were to be embodied in a more definitive agreement. The other exhibit, dated March 14, 1962, was a closing statement which itemized the goods being purchased and the price allocated for each. It contained no reference to “good will”, but contained a recital of “All of the assets of Yoo Hoo Chocolate Beverage Co., located at 765 N. W. 43rd Street, Miami, Florida”, together with a separate allocation for a “Trademark”.
A Motion to Dismiss admits, for the purpose of the motion, all well pleaded allegations of the complaint. This admission is solely for the purpose of determining, if the allegations are proven, whether there would be established a cause of action against the defendants. See Rice v. White, Fla.App.1962, 147 So.2d 204, 91 A.L.R.2d 1290.
The sale of “good will” was therefor admitted for the purpose of testing the sufficiency of the complaint and might be rebutted at the time of trial. We therefore must assume as true the allegation of a sale of good will from the Catroneos to the plaintiff.
The Supreme Court of Florida, in the cases of Wilson v. Pique, 1942, 151 Fla. 734, 10 So.2d 561, and West Shore Restaurant Corp. v. Turk, Fla.1958, 101 So.2d 123, stated:
* * * * * *
“ * * * The purchaser of the good will of a business and its goods is entitled not only to the protection of customers and patrons, but to enter the field of competition unhampered by the adverse influence of the seller. * * * »
=t= * * h= =(= *
In 24 Am.Jur., Good Will, § 23, it is stated:
“The vendor of good will having the right to conduct a rival business may seek for trade by any honest method, including public advertisement or private advertisement among those who were not customers of the old business, and he may deal with the old customers who, attracted by their knowledge, gained by advertising or otherwise, that he is in business, choose to come and trade with him. However, the vendor will not be permitted to destroy the value of the good will by canvassing directly the old customers, endeavoring to dissuade them from dealing with the purchaser of the good will, and soliciting them to trade with the vendor. * * * ” (Emphasis added)
*223 In 24 Am.Jur., Good Will, § 26, it is stated:
“ * * * Consequently, the vendor of a business and its good will who after the sale interferes with the property thus conveyed may be enjoined, the legal remedies for such interference being generally considered not to afford complete and adequate relief. If the unlawful interference is the act of a competing corporation which has been organized and fostered by the seller, the plaintiff may have an injunction against the corporation. Injunction will issue to restrain the unlawful interference with the good will sold by means of wrongful use of the name of the old business or solicitation of the old customers. * * *” (Emphasis added)
The case of Ballero v. Heslin, La.App. 1961, 128 So.2d 453, involved a petition for injunction alleging a sale of a business and “good will” and alleged that the seller was contacting customers of the former business. The court said:
* * * * * *
“We have been able to find only one Louisiana case which directly passes on the question of whether or not a sale of good will prevents direct solicitation of old customers by the vendor. This is the case of J. Alfred Mouton, Inc. v. Hebert, La.App., 199 So. 172. It is concerned with the sale of an insurance business and holds squarely that a sale of good will prevents direct solicitation by the seller of old customers of the business. See also 20 R.C. L. Partnership § 266.
“We are of the opinion that the last portion of Art. 9 of the petition does state a cause of action by alleging that the defendant is contacting customers of the former partnership business in competition with the plaintiff, for it seems to us that, fairly considered, this has reference to direct solicitation of the old customers. Moreover, it would appear that the solicitation began very shortly after the passage of the sale. For the petition was filed just four months after the sale was passed and alleges that defendant ‘is’ contacting customers, etc. Such direct solicitation by the defendant would seriously impair, and perhaps destroy, the good will purchased by the plaintiff and on proper proof thereof the latter would be entitled to some of the relief for which he prays.”
^ •!• »}» H* *{*
In 82 A.L.R. 1027, 1035 (1933), an'annotation in reference to the sale of good will states:
“A vendor of the good will of a business will not be permitted to destroy the value of the good will by canvassing directly the old customers of the firm, endeavoring to dissuade them from dealing with the purchase of the good will, and soliciting them to trade with the vendor at his new stand.” (Citations omitted)
See also 38 C.J.S. Good Will § 12; 10 F.L. P. Good Will, §§ 13, 18 and 19.
The Renpak case, supra, involved primarily the question of former employees engaging in a competing business with their former employer and whether injunction would lie to prohibit their soliciting business from former customers; it did not involve the alleged sale of a business and good will and an interference thereof by means of solicitation of the old customers and accounts.
The complaint was filed approximately twenty-six months after the alleged sale of the business and good will. The only question presented in this appeal is “did the complaint state a cause of action in order to withstand a motion to dismiss?”
We are of the opinion that the allegations concerning the sale of a business, together with good will, are sufficient to state a cause of action against the Catron- *224 eos, which, if proven, may sustain injunc-tive relief to prevent them from directly soliciting their old customers to purchase a similar product from their new business.
The record does not disclose sufficient facts to determine whether Zippy Chocolate Beverage, Inc. was the alter ego of the Catroneos; or if there were other stockholders, officers or directors of the corporation whose interest might be affected by an injunctive order.
The plaintiff, upon reversal, should be given the opportunity to amend its complaint if necessary, in order to show what cause of action, if any, it had against the corporation, Zippy Chocolate Beverage, Inc.
The cause is therefore reversed and remanded for action consistent herewith.
Reversed.