226 So.2d 693 (1969)
FLORIDA DISCOUNT CENTERS, Inc., a Florida Corporation, et al., Appellants,
v.
Paul ANTINORI, Jr., Etc., et al., Appellees.
FLORIDA DISCOUNT CENTERS, INC., a Florida Corporation, et al., Appellants,
v.
STATE of Florida, by Fred O. DICKINSON, Jr., Comptroller; Earl Faircloth, Attorney General, and Broward Williams, State Treasurer, As and Constituting the Florida Securities Commission, Appellees.
Nos. 68-416, 68-417.
District Court of Appeal of Florida. Second District.
June 6, 1969.
Rehearing Denied October 15, 1969.
*694 William R. McCown and Robert H. Carlton, Tampa, for appellants.
Earl Faircloth, Atty. Gen., Tallahassee, William D. Roth, Asst. Atty. Gen., Lakeland, and Milton J. Wallace, Asst. Atty. Gen., Miami, for appellees.
MANN, Judge.
Purchase at a cost of $320 of either a sewing machine and accessories or a set of aluminum cookware, both said to be "nationally advertised" at a price in excess of $300, but either of which is purchased by appellant for less than $70, makes one a "founder" eligible to earn $60 upon recruitment of each founder subsequently persuaded. When the maximum of 3000 "founders" have joined, or sooner if the appellant were to deem it practicable, a "discount" store would be opened, capital for the venture coming from a portion of the money paid in by the founders, who would thereafter earn commissions on sales to the 100 families whose names were to be supplied by each founder. It is the appellants' contention, to simplify, that the imposition of a maximum of 3000 participants prevents this scheme from being a pyramid club forbidden by Florida Statutes 849.091, F.S.A. and that the requirement that the founders provide the names of customers for the "discount" store and keep them as active customers there removes the scheme from the registration requirements of the securities law. Florida Statutes c. 517 (1967), F.S.A.
To the credit of Mr. Carlton, president and counsel of appellant, a full disclosure of the circumstances was made and there was no effort in Florida, as there was in a similar Alabama case, to submit the case on agreed facts. Testimony was taken which convinced the trial judge that the persons who signed up as founders were not interested in a three-hundred dollar sewing apparatus or in a set of cookware, but in the possibility of profit.
Judge Wigginton has explained in M. Lippincott Mortgage Investment Co. of Florida, Inc. v. Childress, Fla.App. 1968, 204 So.2d 919, why schemes of this nature contravene the law against chain letter and pyramid clubs. We need add only that the *695 imposition of a ceiling does not cure the evil in the situation found by the trial judge to exist.
The securities law violation is more complex and appellant relies understandably on Gallion v. Alabama Market Centers, Inc., 282 Ala. 679, 213 So.2d 841 (1968). The scheme here involved is essentially that of the corporation which the Supreme Court of Alabama held had not violated Alabama's similar securities law, and is set forth fully in the opinion. Appellant is also comforted by dicta in S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and McElfresh v. State, 1942, 151 Fla. 140, 9 So.2d 277. In McElfresh our Supreme Court stated that the determinative factors as to whether an agreement is a security are the purpose of reaping a profit and that the extent of the profit is to be gauged by the efforts of the vendor. In the Howey case, the Supreme Court of the United States held the sale of small tracts of land making up citrus groves the sale of securities under the federal act. The opinion stated that the test is not whether the property has intrinsic value but "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301, 66 S.Ct. at 1104. These statements lead appellant to contend that its market plan, dependent upon efforts by the founders, is for this reason exempt from the securities law.
We read Chapter 517 without once encountering any suggestion that the efforts productive of profit must be limited to others than the investors. This is clearly not an exempt security under § 517.05 or an exempt transaction under § 517.06, and if the founder's interest is a security under § 517.02(1) the trial court properly held the scheme to be violative of the law. In this case, after paying for the merchandise and various commissions and sales tax  based, incidentally, on a $150 sale, and we are not suggesting that payment of tax on a $320 sale would have validated the transaction  the balance of the funds is devoted to the establishment of a business. The purpose of the founders was found, on ample evidence, to be both profit from the commissions paid upon obtaining other founders and commissions on sales from the store to be opened in the future. Although the stock of the appellant corporation is privately held, the store is to be operated in accordance with the market plan and each founder must either make a monthly payment to cover the store's overhead expense or suffer a reduction in his commission on sales. The entire scheme is ingenious, but clearly directed toward the possibility of gain. We hold the founders' contracts to be "interests in or under a profit-sharing or participation agreement or scheme" within the meaning of § 517.02(1) for the reason given by Mr. Justice Murphy in Howey just following the passage relied upon by the appellant: "The statutory policy of affording broad protection to investors is not to be thwarted by unrealistic and irrelevant formulae." 328 U.S. at 301, 66 S.Ct. at 1104.
Affirmed.
McNULTY, J., concurs.
PIERCE, A.C.J., concurs in part and dissents in part with opinion.
PIERCE, Acting Chief Judge (concurring in part and dissenting in part).
In my opinion appellant's "plan of operation" contravenes the pyramid club statute, F.S. § 849.091 F.S.A., as construed in the Childress case; but I do not think it constitutes a security within F.S. Ch. 517 F.S.A., under the reasoning of the Gallion case, which involved "Alabama's similar securities law." I would therefore affirm as to the alleged lottery violation, and reverse as to the alleged securities violation.